Good afternoon, ladies and gentlemen. We are here this afternoon to hear argument in Whole Woman's Health Alliance against Curtis Hill and others. And we're ready for you, Mr. Fisher, if you're ready for us. Thank you, Chief Judge Wood. And may it please the Court. The Court should stay the preliminary injunction giving Whole Woman's Health of South Bend a free pass as to Indiana's licensing requirement. There's no urgent need for the injunction. Whole Woman's Health itself waited nine months after it filed the suit and over a year after its license application was initially denied before filing this motion. There's also no basis for granting the injunction. Mr. Fisher, let me ask you a question. I mean, there are a lot of questions I have. But is the problem here, in your view, with the form of the injunction? And here's what I mean by that question. If the injunction had, in essence, said that the state was compelled to grant a provisional license pending the outcome of the litigation such that it would be very clear the state would have all the powers of inspection, all the powers of supervision, record maintenance, all the rest of the things that go along with state law, would your position be any different? I think we would still object to that. I think we would still be appealing to that. Candidly, it would be better than the situation we're in now, of course. I don't think that that really is within the province of federal courts to reach out and compel state agencies to give licenses. Well, that's why I said provisional because, I mean, if the federal court can say don't do anything at all, I don't know why something less. I mean, in a sense it would be a functional equivalent since quite a bit of information has been turned over to the state by this time through these two licensing proceedings. Well, of course, the Department of Health wants more, and it's within their statutory authority. How much more do you think they could? Are they moving the goalposts, or are they really engaged in a bona fide search for information? No, they're not moving the goalposts. They are trying to get the information regarding license applications, investigations, enforcement actions from Whole Woman's Health and all its affiliates. And I think the battle before was over this meeting of affiliates, but I think that's been resolved. Well, I don't know. Let me ask you this. Do you think if hypothetically, I'm not saying this is the relationship here, but hypothetically if there were a franchisor-franchisee relationship or a trademark holder-trademark licensee relationship, does that, in your view, fall within Indiana's definition of affiliate? I don't think we would look technically at the franchisor or trademark. What we would look at is the control, the ownership and control. So in other words, you wouldn't call franchisor-franchisee control. That's a contractual. Well, I think so. I think saving the possibility that in any given circumstance there might be de facto control. What would you mean by de facto control? Notwithstanding that it seems like an ordinary franchise relationship where there isn't a day-to-day operational impact from the parent or the franchisor. Maybe there's something going on in the background where there is de facto control by the franchisor. I'm just leaving that option open. Right. I'm just trying to understand what you mean by that option because I certainly understand corporate control, corporate relationships. I understand affiliates. We may have some of that here. We may not. But it seems that people who in good faith want to comply with the state's regime need to know what they have to tell you, what kind of de facto control. If you pick up the phone and it's Susie Smith, then you have to listen to what Susie is saying. But if it's Joe Smough, you don't have to listen. Granted, I think any mystery around that has been resolved, both by reference to what the Department of Health has told Whole Woman's Health and because there's now a statute that clarifies what we mean by affiliate, which goes back to ownership and control. So going forward, I don't think there could be. Right. So under the statute, I looked at that statute carefully. Under the statute, you think that it's a classic corporate law concept, ownership or maybe control of board of directors somehow. Right. Okay. Yeah. So in any event, I think, and I don't understand Whole Woman's Health at this point. I mean, maybe once we get to the full preliminary junction, they'll have that as an alternative basis for. But at this point on the stay motion, I don't understand that really to be in play. And I think what we've got then is the Department of Health asking reasonable questions about who these new players are coming into the state and how they are likely to operate. I don't think there's a concession about that. I mean, I know that's your position. Did I say concession? I didn't mean to say concession. I don't think so. So, sure. So the Department of Health has asked a lot of questions. Am I right that the ball stopped with you? They gave a bunch of information in response to the second set of inquiries but drew the line someplace, but the department never came back to them to tell them it wanted more? No, I think the department has not taken an action on the second license application. Right. So what I remember is that Whole Woman's Health Alliance responds March 15, 2019. They explain they think the requests are overly burdensome and expansive, but they give some additional information. And the department never responded to that. Is that correct? It escapes me at the moment whether there was a specific response. The effective response has been we want the information that we've asked for. And I think we're not talking here about battles over privilege or anything like that. We're talking about a wholesale rejection of the categories of information, the main three categories of information the department wants with respect to the affiliates. Would it make any difference to the department if, because of the corporate structure of these other loosely-defined affiliates, Whole Woman's Health Alliance didn't have the authority to command them to produce documents? Well, I think if that were the case and they didn't have the authority to produce the documents, that might have an impact on what the department understood it was dealing with. Now, you know, then the department would have to look at whether, and I don't know the answer to this, whether it would have some sort of subpoena authority to be able to command that. But I don't think that's ever been in dispute. I don't think anybody's ever disputed the idea that Amy Hagstrom Miller in particular could command each of these affiliates to produce these documents. Okay. So, and I think where the district court then, I think, went kind of off the tracks in terms of looking at the preliminary injunction was in not understanding that there are these important, not only, you know, abstractly important anti-credentialing, you know, I think, advantages of doing the licensing. But that carries forward also into the ability of- Counsel, one of the credentialing advantages is obviously you can figure out who's playing what role. I must say I was troubled by the assertion in your supplemental memorandum that it's a problem for these clinics that someone who you don't name is connected with O. Rich Klopfer. Right? That sounds like an argument about guilt by association. And if we're going in that direction, licensing is highly problematic, right? It's the equivalent of asserting so-and-so was a partner at a law firm where some other person committed a crime, and therefore that person can no longer practice law. We don't follow guilt by association. So who is this person? What is that connection? Why is it relevant to licensing? Your document, after throwing this red herring out, is entirely silent. Why is that pertinent? Do you want a name? I want an answer. Okay. Who is that person? What is the connection? And why is it pertinent? Executive director of the Klopfer Clinic, and I think the pertinence is that given the lack of reporting that was happening at the clinic, if there would be a need to investigate if this person was going to be the director at Home Women's Health, was he involved to research? Do you have any reason to believe that this person? The district court gave the name Liam Morley and said it was either an employee or administrator, and the district judge apparently didn't know which. Right. Do you have any reason to believe that Liam Morley is not suited to operate or be associated with a medical clinic? I don't know. I think the only reason. Well, when I say you, it's an institutional you, whether the state of Indiana. Understood. And I think the point there was simply that that was one of many factors that went into asking for more information, the need to conduct further investigation. I hope you can see the worry. Sure. When you throw out something which suggests we're just engaged in guilt by association here, it suggests that you're not engaged in a serious effort to find qualifications but are just trying to blow smoke. And if blowing smoke is the goal, this whole process looks pretextual. And if it's pretextual, you've got a serious problem. Understood. And I think the explanation there is simply that that was one of many factors that prompted the department to ask for more information. It was not itself a reason to deny a license or anything else. It was just one of many factors where the department said, you know what, we need to conduct further investigation. You know, that's troublesome for the reasons that Judge Easterbrook states, and also it's one of the reasons that perhaps several of us up on this bench have not been big fans of multi-factor tests. You don't know what that means. You say it's a factor. What is it, a 1% factor? Is it the dispositive decision? I don't really know what it means. And if they can come forward with, you know, this actually gets back into some of the bureaucratic minutia that was going on beforehand about whether the license was initially denied because of incompleteness, whether it was denied because of reputation, how can we tell the difference? The accuracy doesn't seem to be very clear in this record. It seems like it was just considered to be incomplete, and the state of Indiana itself encouraged Hope Women's Health Alliance to try again, to apply a second time, which they did. Sure, yeah, and I think it's a combination. The response was incomplete and did not demonstrate the reputable and responsible character. But those are two different things under Indiana law. Yes, but they're not unrelated. They're two different subsections of the regulation. But they're not unrelated. But they could be. Think of this. Suppose we're talking about ordinary federal litigation, and somebody, let's say, files a motion for summary judgment,  that doesn't automatically mean that you impose Rule 11 sanctions against the person who was opposing summary judgment. So in other words, the point being that you can fail to win, you can fail to prevail on what you're trying to do, and at the same time, you may not have done something morally terrible. You may not have shown bad judgment as a lawyer. You just thought you might win, and you didn't. And so I'm thinking of those two parts of the Indiana law as capturing those two ideas. One of them is a very serious, you know, bad reputation. The other, no, it was either inaccurate or incomplete information, but this definition of affiliate is as murky as can be, and somebody might have guessed wrong and thus not given you what you wanted but not done anything disreputable. They're quite different. Well, I understand. There are additional opportunities, of course, to then respond to the request for information, but I would say this. But when you ask for everything, I mean, suppose you ask for all their traffic tickets, and then you said, actually, I'm not going to take your word for it that you've never had a traffic ticket. I want you to get records from the State Department of Motor Vehicles in every state in the United States in which you've ever driven a car certifying that they don't show any moving violations for you. I mean, that would be a pretty burdensome request. Well, I'm trying to figure out where we want to go with this discussion. I think the point is that if those requests would be beyond the authority of the department and not relevant to the statutory inquiry, that's a matter for. . . No, no, no. I'm worried about this too, but you need to pull apart. Let's suppose the Indiana statute says the state can ask for any information it wants without limit. That's just a matter of state law. Right. And then there's the question whether that authority under state law, this is what I understood the chief judge to be asking about, is being used for a legitimate purpose or an illegitimate purpose. Okay. Well, in that event, then we would look at, I think, a federal claim coming out of that. But I do not understand Whole Woman's Health to be saying that the requests for information themselves are violations of their or their patient's due process rights. I understand them to be saying that under the circumstances, holding them to the state standards is an undue burden given the circumstances in South Bend. I think, I mean, you had some discussion of this sort in your briefs, both the first one and then the supplemental brief. We obviously take Indiana law as it is. There's a provision of Indiana law that says, and we can ask for any other information we want, more or less along the lines that Judge Easterbrook just said. And if that is so broad as to create a system in Indiana that amounts to an undue burden on a woman's right to seek a first 70-day abortion, then we've got problems. Then we get into Whole Woman's Health against Hellerstedt. We have to balance, according to the Supreme Court there, see what's the benefit. That, in turn, draws us into this distinction Indiana has drawn between miscarriages and abortions. There are a whole lot of things down that path. But the first thing is, what is the authority? And the authority looks to be unbounded. Well, but it's not been applied in an unbounded way and not applied in a way that I think Whole Woman's Health says is an undue burden. But they do say it's a burden. Well, I'll ask them. That would be easier. That's the whole point of the litigation. They say this is an undue burden. They may not have put their finger on the thing that is the real source of the burden, but they certainly say it's an undue burden. They say that applying with a licensing law at all under the circumstances itself. Well, one can understand them to be saying, we'll ask them if they are saying, but applying a licensing law that allows the state to ask for anything in the universe that it decides to ask for, no matter what the cost or delay entailed, produces an undue burden, even though a more normal application of a licensing statute, one that, say, would give an attorney a license without asking whether he's ever been in a law firm with anyone who has ever done anything wrong, would be fine. Well, if their complaint is that on the face of the statute, the authority is too broad, I don't think they're standing to challenge that abstractly. I thought they were saying, just to cut you off for a bit, I thought they were saying the particular requests that the department sent out to them in response to their second application for a license were so unbounded and took you down so many rabbit holes that they were, in fact, not pertinent. I mean, nobody's saying there can't be a license. There can be a license. We know that from plenty of Supreme Court cases. But it doesn't mean that every hoop that you might have to jump through to get a license is automatically fine. And I think they're focusing on these extraordinarily broad requests that came out at the second license stage. Well, no, I have understood their claim to be that the breadth of the request and the nature of the request were related only to their vagueness claim, not to their undue burden claim. That, in other words... It's just a way of characterizing their argument. One can characterize their argument as objecting to the very fact of licensing. The district judge did that. And that, of course, runs into the teeth of Supreme Court cases, which you've cited. The other way you can characterize it is by saying, if Indiana licensing law requires the entire examination of the life history of the applicant and their ancestors and everybody to the fourth level of civil relationship, then this particular kind of requirement is invalid. One can understand them as saying the latter. You can understand why we're asking these questions. I can. And if that's what they're asking, if that's their argument, then I think it comes back to the requests themselves are not that broad. They're not at that level. They are within, I think, a bound of reasonableness, as even I think the district court acknowledged. We're talking about licensing, applications for licenses, investigations, enforcement actions by Whole Woman's Health. Mr. Fisher, could I ask you about that in the state's interest? Now, the Indiana requires these disclosures for abortion clinics, but it doesn't require it for ambulatory surgical centers. Can you tell me where the state interest is different? They're both under the licensing scheme. So why would we have the disclosure commands in the abortion clinic setting, which the state is not requiring in the medical clinic setting? I mean, if we're talking about women's health generally. Right. Well, I mean, I think there is. I'm not sure this exactly answers the question, but I do want to point out, of course, there is the interest in field life that's not present in those situations. If you've got a physician who's licensed to perform an abortion in a medical clinic, of course he has to report it. Right. The state's interest is still in field life important there too, right? Oh, in the ASC? In the medical clinic generally, you know, the ambulatory clinic. Well, I guess I would have – I'm not familiar with that proposition that an ASC that's performing abortions would not have to have the same licensing. In Indiana, a doctor who does has to report that, right? Oh, yes, definitely has to report, sure. Right, right. And that could happen, right, in the clinic that – Oh, I see. We're talking about the physician clinic? Yes, yes, exactly. Well, I think there is actually, though, written into the law this sort of de minimis level. So it used to be that there was a distinction per se between physicians and abortion clinics. Judge Magnus Stinson said that that was an equal protection violation. The legislature fixed it. So now it's if a physician's office, what would otherwise be a physician's office, undertakes five or more abortions, then they'd have to be licensed. Right. So it's just a de minimis exception that is there so that we don't catch somebody who's just not doing this here and there as opposed to as a systematic effort. And I think that that's certainly consistent with what circuits around the country have said is permissible because it's not making this sort of categorical distinction. It's just an even-handed de minimis exception. So before you sit down and say two things, Mr. Fisher, one, I'm going to give everybody some extra time because I don't want to cut anyone off. Two, though, I think there's a – maybe you didn't mean to phrase it this way, but there's a fallacy, I think, in what you said. Clearly the state does have an interest in fetal life from the start. So you can have an informed consent requirement. You can have these requirements that in this litigation nobody's challenging. But at the same time, in both Casey and then reiterated in Hellerstedt, the Supreme Court has said that whatever the state is doing during the pre-viability period cannot have the effect of placing a substantial obstacle in the path of a woman's choice. That's not a permissible means of serving the state's legitimate end. So I want to make sure that it's clear that just because the state has that interest in fetal life throughout the process doesn't mean that any restriction that the state comes up with to serve that interest is all right. At that early stage, it's got to be one that does not substantially burden the woman's choice. Agreed. I think the point that I'm trying to make is only that when we think about how different standards apply in different contexts, sometimes we are focused only on the physical health of the woman. Sometimes we're concerned about fetal life and maternal emotional or mental health, and we have to just make sure we've accounted for those. Okay. Fine. All right. Well, I will let you sit down, and as I said, I'll give you some extra time. Thank you. Yes, now we will hear from Ms. Singh. Good afternoon. May it please the Court. The district court properly granted Holman's Health Alliance for WWHA preliminary relief from the requirement to obtain a license for its clinic in South Bend, Indiana, which enables residents of Indiana to obtain medical care. You can tell what kind of question we're about to ask. Yes, Your Honor. Are you defending the district court's decision that a license simply cannot be required of your client's clinic at all? What the district judge said is, I think ex post punishment is sufficient, and therefore ex ante licensing cannot be required. Are you defending that? Your Honor, the district court found that the application of the licensing law The answer is yes or no, and then you can explain why. Your Honor, yes, we are defending the district court's decision that the application As a preliminary matter or as a permanent matter? Because certainly if it's a permanent matter, there are a number of Supreme Court decisions that have said, I'll rephrase, properly administered licensing that's not unduly burdensome is fine, going actually all the way back to the companion case to Roe v. Wade. So there were various restrictions that have to deal with hospitals. So I think clarifying exactly what you are saying about this licensing scheme is important. Yes, Your Honor. We contend that as applied to Holman's Health Alliance, as a preliminary matter, the issue before the district court was for preliminary relief. You're certainly challenging the license requirement facially in their larger lawsuit. That is not the issue that was before the district court here. So for present purposes, can we take it that you concede that the state of Indiana, if it wants to do so, can ask even clinics providing so-called medical abortions, pill abortions, can be required to be licensed so that the state can, you know, check them for cleanliness and proper medical procedures and make sure that licensed physicians are responsible for what's going on, all those things that the state has been said that it can do in many cases? Yes, Your Honor. The injunction would not prevent the state from doing any of those things. The injunction prevents the state from doing all of those things. It's quite explicit that the licensing requirement itself cannot be applied to your client. To our client, but it could be applied to other clinics in the state of Indiana. What about your client? But we're dealing with your client. We're dealing with decisions of the Supreme Court saying that licensing is valid and not inconsistent with the substantial burden test. I ask this in part because of what seems to me just striking conflict between the district court's opinion and the Supreme Court's and the district court's failure even to discuss the pertinent Supreme Court cases. But the other way of understanding your argument is to say, yes, of course the state can require a license, but it can't require so much information that that effectively prevents somebody from getting a license without a cost so great that we don't operate the clinic. Right? That would be a substantial burden in a way that a normal license would not. I understand you've got this problem. The district court said licenses just can't be required because I think different means of enforcement are better. But are you contending that if a license can be required, what the state has required is itself a problem? Yes, Your Honor, we are contending what the state has required here is a problem. So those additional questions that I referred to with Mr. Fisher that came in the wake of your second application where they really did seem to want the kitchen sink, you are attacking that? Yes, Your Honor. So that's why I asked Mr. Fisher. In a sense, what I understood you to be arguing was that between the first licensing proceeding that got resolved, it got dropped sort of after the appeals panel ruled, and the second that your client has already furnished a very significant amount of information to the state licensing authorities and that at least pending the outcome of the merits phase of this litigation, that's enough to satisfy whatever licensing burden there is. That's why I asked him whether some other injunction that kind of made it clear that, I mean, suppose, I'm sure this is going to happen, but suppose six months from now, it turns out that no one's cleaned the floors for four weeks in your clinic and the state wants to come in and say that's unacceptable. We have a completely independent reason for saying that this is a problem. It's hard for me to see why the state shouldn't have that power. Yes, Your Honor. Well, the state continues to have that power, and that is what the district court found. Under what law, though? I didn't see, other than the ex post, clearly the state's got a lot of leverage because of physician licensing. I know all of that. But the state is saying we want to be like all other states who can actually ask for a license. We can go in, investigate, make sure you've got the right equipment, the right manuals, practices. Isn't there some way to say that you've done enough now to let the state do all that, that you concede that they have those powers and you are in that sense a de facto licensee while this case is being resolved? Yes, Your Honor. We are telling the state they have all of those powers. They are free to inspect. The district court was unpersuaded by their argument that they lack the ability to inspect. The definition of an abortion clinic is a health care provider providing medical care. A health care provider is in turn defined as a physician or a facility that is either licensed or authorized by state law to provide medical care. Absent the licensure requirement, Holman's Health Alliance would be- Ms. Singh, I want to understand your argument also because I'm not clear on your responses on whether the state can license it. I understand your argument now that they have powers apart from the licensing. Yes, Your Honor. I appreciate that. But from the standpoint of Supreme Court jurisprudence, do you question that they could have a licensing scheme? I'm not talking about whether in this case it's been so excessively administered that you have an undue burden. Are you standing here today and suggesting they do not have- the state doesn't have the power to license an abortion clinic? No, Your Honor. We do not contend that a licensing scheme is per se an undue burden. That is not our contention here. Two things that I would say- That's good, I'm going to say. That was the right answer. Then you should have answered my question the other way. You're not defending the district court's injunction or the district court's reasoning because the district judge said, I think ex post powers are sufficient, and therefore ex ante things like licensing simply cannot be used. And that's what the injunction says. And that injunction is, well, let's just say more than a little problematic. Your Honor, we don't contend that licensing, again, is per se an undue burden. Instead what we contend- It would be fine for you to say, we don't defend what the district judge has said, but we wish the district court had said ex. That's fine. Lawyers do that all the time. Your Honor- And I'm just going to remind you we are not bound by what the district court said. No, we're not. Yes, Your Honor. That's why we call it the appellate court. Our understanding of the injunction was that it would prevent the department from requiring Holman's Health Alliance and South Bend Clinic, just the South Bend Clinic, to obtain licensure before providing medication abortions. Well, that was the way the district court phrased it. That's the problem. But what we've been exploring is the fact that the problem may really just lie with the way the state was handling the licensing process, this FBI full field clearance approach that they were taking to all of the people involved with the clinic. I do understand that the case has been limited in many ways at this stage. It's been limited to South Bend. It's been limited to the medical abortion procedure, not surgical abortions. So there are significant limitations, which do give us a much narrower set of concerns than we would have otherwise. We're not looking at your original complaint. But within that, there may or may not be a way of saying we recognize the state's legitimate interest in licensing, but we also recognize that when it's being used this way, I keep groping for the term, some de facto license, something that preserves as much of the state's power as possible, which is the direction the Supreme Court seems to want us to go in. Your Honor, we would certainly accept an injunction that this court thought was narrower in scope. The relief that we seek is the ability to provide care in South Bend. So medical abortions only. Correct, Your Honor. So that Northern Indiana residents don't have to take the lengthy trips and experience all of the associated hardships that currently exist. That is how we had understood the injunction, and we would be perfectly fine with an injunction that was narrowed in scope pending the outcome of the lawsuit. I'd like to address the benefits of the licensing law. The state has argued that the licensing law advances Indiana's interest in patient health and in potential life, and I'd like to talk about both of those interests. Turning to patient health, the district court properly concluded that medication abortion is safe based on extensive evidence that Whole Woman's Health Alliance provided and based on the state's failure to provide any contrary evidence. Defendants have failed to provide evidence that the licensing law enhances the safety of medication abortion. And the fact that the state allows... We're now back to saying the state just can't require licensing at all. I thought we had moved past that. As applied to both... You remember what happened in the Supreme Court. The Ninth Circuit said that about the licensing of the clinic in Kalispell, Montana, which is a long way from any other place. It said other forms of regulation would suffice. They got summarily reversed. The district court didn't discuss that decision. You haven't discussed that decision. The whole point of that case was to say that a federal district judge can't decide one case at a time whether licensing is better than some other means. Licensing is okay, but of course if licensing is being used as a veto power rather than a license power, then there's a problem. That's where we're trying to steer this. And I think what... Again, going back to Hellerstedt, which is the Supreme Court's most recent pronouncement on all of these things, the court is looking at... The court very clearly says you can't just talk about benefits, you have to talk about burdens as well. They use the dreaded balancing word, too, in a number of places in that opinion, mostly in Part 3. And so I think the licensing regime itself for pre-viability procedures has to reflect the rules that Casey established and Hellerstedt reaffirmed. Yes, Your Honor, and as applied in this particular situation, we contend that the burdens that are imposed by applying it to Holman-Tubline to South Bend Clinic outweigh any benefits that would accrue. Let me ask this. What if there were no clinic in South Bend? I mean, to what extent is the district court looking at the burden on the right that women have in northeast Indiana, or mid to northeast Indiana, if there were no clinic at all? If there were no clinic in South Bend, then it would also mean that individuals that lived, for example, in Fort Wayne and other parts of north central and northern Indiana would have to travel further distances. Now, is it permissible, as far as you're concerned, for the state to rely on the availability of abortions in Chicago outside the state? No, Your Honor. In fact, this court has also held that it is not permissible. It doesn't cure a constitutional defect to say that abortion is available in Chicago, Illinois. This court found that in Schimel. So sending someone to Chicago doesn't cure that problem. We also said the same thing in Ezell when it comes to the Second Amendment, that just because there are gun ranges in Cook County didn't mean that Chicago as a city wouldn't have them. Yes, Your Honor. So I guess what I'm asking in part is just what's the baseline that we're measuring burden against? Is it clinic Velnon for South Bend, or is it something else? Yes, Your Honor. So the proper inquiry would be on the group for whom application of the licensing law is a burden, not for the group for whom it is irrelevant. This court has clarified that standard previously. Here, applying the licensing law to Holman Health Audience's South Bend clinic is a burden for individuals living in northern Indiana who would have to travel further distances and experience associated hardships. Well, is the licensing law the burden or the application by the state creating an onerous situation that you can't comply with? I mean, I think it's important to frame this in an acceptance that licensing is a fact of life right now under Supreme Court jurisprudence. You may question that, but that seems to be, I think, the prevailing view. It is just, in this case, that you're burdened because you can't comply. Isn't that what you're saying? Yes, Your Honor. We are saying that it's... I mean, isn't that everything? You just cannot comply, and your position being because it's too onerous. Yes, Your Honor. We are contending that we can't comply. We can't get a license because of the way in which the department is applying the law. And then as a result, we're being prevented from providing needed abortion care in a community... No, I understand the bottom line. Yes, Your Honor. So what is it that you want us to focus on on the abuse by the state, if that be the right term, in the way it's applying the license? What demands did you specifically feel are beyond the pale? Yes, Your Honor. So the demands are beyond the pale, both on their face and in context, and I'll address... Well, you started to comply, though, right? You didn't initially feel that way, did you? We did attempt to obtain a license for nearly over 18 months. Your starting point is an acknowledgment of the licensing scheme, correct? Your Honor, yes, Your Honor. The licensing scheme exists, absolutely. We attempted to obtain a license not once, but twice. Right. This latest document... Did the state change the definition, or at least it clarified? I don't know whether change is the right word. But the definition of this critical term, affiliate, moved during the course of these proceedings. So you had originally responded with just the Austin, the Charlottesville affiliates. Then the new legislation was passed, and it redefined affiliate. I understood that, yes, as Judge Flom says, you were starting to try to comply, but the state deliberately didn't tell you what it meant was an affiliate, even though apparently you can just go on the website and see lists. But anyway, that's kind of the moving the ball, or moving the goalposts problem that I was worried about with Mr. Fisher. That is correct. The state has moved the goalposts. I would also like to just point out that we did on behalf of Poland's health. We did attempt to provide the inspection reports in the first instance. So they asked for those reports before Indiana law ever defined affiliate, and we said, fine, have them. But what they told us was we can't maintain the confidentiality of those documents. If you give those to us, we're going to have to turn them over pursuant to an Indiana State Public Records Act request, and you're not going to be able to redact anything or to protect any information. And even if you went to the administrative law judge and got a protective order, we wouldn't be able to comply with that either. Did these reports have individual patient names in them? They did have information about the clinics, and so often when these reports are made public, there are redactions that take place. But the department's position at that point initially was, well, you can't do that. They changed their position later, once we got before the administrative law judge. But at that point, we were going to hearing, and discovery had closed. So it's not as if we've been trying to hide anything. What happens is we provide information, they come back, we want something more. This latest request, for example, doesn't just ask for inspections. What it actually says is, give us every single document you have that concerns, mention, or relates to any investigation, inspection, or survey for any of the Holman's Health LLC entities for the last five years in any of the five states in which they operate. Such a request would include documents that contain information about strategic business and financial decisions about where, when, and how to open a clinic, and yet they would shed no light on Holman's Health Alliance's ability to safely provide abortion care. And that's supposed to be the purpose of the licensing law, even according to the department today. So we do contend that that request, on its face, it's overly broad, and also in the context of all of the thousands of documents we've already provided, which also does include inspection reports from Holman's Health Alliance's Charlottesville clinics. Do you have, is the relationship among these other, among Holman's Health Alliance and these other clinics, I must confess I've had a little trouble drawing the organizational chart, but does Holman's Health Alliance have the kind of relationship, perhaps through Hagstrom Miller, to order these other LLCs around the country to furnish confidential business data? Holman's Health Alliance does not. Ms. Hagstrom Miller, however, as I just mentioned, she did attempt to provide the documents. So we went to her and we said, will you turn over the inspection reports from your LLC entities so that Holman's Health Alliance can get a license? And she said yes, and we attempted to go to the department and said, okay, just don't turn these over to the public because what ends up happening is those are used then to defame Ms. Hagstrom Miller, Holman's Health Alliance, Holman's Health LLC. They're pulled out of context. They're sometimes produced in partial form. And in fact, the department has presented to this court only partial inspection reports. They're making allegations based on an inspection report, but not providing the plans of corrections and not providing the answers that the Holman's Health Alliance entity made to the inspection report. And what ends up happening there is that those allegations are pulled out of context, and then they're used to say, well, you're not providing safe care. You're jeopardizing patient health, and that's just not the case. There's many reasons why that's not the case, but the fact is that in Texas and in Virginia, those clinics are still operating. Those states have not revoked licenses. Those states have not taken action against those entities, and that's evidence of the fact, at least based on the department's logic, that they're safely providing abortion care. Okay. Was there anything? I mean, I'm going to let you. If you have another minute, you can have it. Otherwise, I will turn it back to Mr. Fisher. Yes, Your Honor. I'd just like to say with respect to the state's interest in furthering potential life, the informed consent requirements that they contend are necessary. What they're arguing is the licensing law advances the interest in potential life because it aids enforcement of the informed consent requirements. Those requirements continue in place. We acknowledge that we have to comply with them. Both Defendant Medical State Licensing Board and Defendant County Prosecutor have the ability to enforce those requirements on the individuals on whom they impose duties, which is the physicians. It's physicians, and with respect to the- So you're just saying very little marginal benefit for whatever- Yeah, I know. This is not Judge Easterbrook's favorite point, but in any event, burdens and benefits, I'm going to understand that's what you're arguing about. Yes, Your Honor, and also that the department hasn't provided any evidence as to how licensing actually increases the likelihood that the informed consent requirements are complied with, given that the licensing law doesn't impose any of those obligations itself. All right, so maybe that's actually a red herring. Well, if you'd like to sum up, that would be fine. Yes, Your Honor. Holman's Health Alliance contends that the licensing law, the only issue before the district court, and the injunction that we seek is that the licensing law should not be applied to the clinic in South Bend. We should be allowed to provide abortion, medication abortions in South Bend. Why don't you say in its entirety to the clinic in South Bend? Yes, Your Honor, in its entirety to the clinic in South Bend so that we can continue to provide medication abortions there pending the outcome of the lawsuit. That is the limited relief we seek. All right, thank you very much. Thank you, Your Honor. Mr. Fisher, I'll give you three minutes to rebut. Thank you, Your Honor. With respect to the information request, I think it's important to remind the court of what Holman's Health said in its briefing, which is not that it couldn't comply, but that it would cost, quote, dozens of hours to be able to comply. That was only one of the parts. They said dozens of hours. The different part, they thought it would be hundreds of thousands of pages, five years' worth of documents for anybody who's been doing litigation. It's not a small amount, especially when it's everything that even brushes up against... No, but the point is they haven't said they can't do it. They have said they don't want to do it, and we've heard some of the reasons why, which are fairly clear. But why is it relevant? Has Indiana had a big problem with lack of compliance with informed consent rules, or lack of compliance with 48-hour, whatever they are, 18-hour waiting periods? We did have a very big problem in South Bend with a prior abortion clinic run by Dr. Ulrich Klopfer, who was not reporting underage. Well, that was a difference. It just illustrates that, yes, there is this possibility, and you want to know who you're dealing with. But I think the more important point here is that if the court is concerned, and again, I don't concede that it ought to be, but if the court is concerned about the breadth of the requests, that that's where there's a problem, then I don't think that certainly enjoining the entire licensing scheme as to a whole woman's health is the answer. The only answer there can be some fairly targeted relief at the information request. And indeed, going back, I think Chief Judge Wood, to your suggestion about can you order the department to just issue the license, I think that's too much. If the court were to say, well, you have to consider the application, but you can only ask for the following documents, following categories, whatever it is that the court comes to a conclusion is constitutionally permitted, and then it goes back to the agency, then the agency can continue to do its job as a licensing entity, because I think it has to consider the documents, the information it receives, along with other statutory factors. But the department is unwilling, to go back to my speeding ticket example, it's unwilling to take somebody's affidavit that they've never been shut down for health or safety reasons. It insists on going back to the public authorities, I suppose, to verify that. Well, I think so, but I guess all I'm getting at, Your Honor, is we think that's fine. If the court comes to a different conclusion, the relief cannot possibly be, therefore, no more licensing. It has to be targeted at that particular concern. It can't be so broad as to require the license, as to say no licensing scheme at all. The relief has to be targeted. And we haven't talked at all, and I guess maybe we won't need to, about the state's position with respect to the need for information for abortion clinics, as opposed, I think it's a little bit what Judge Fong was asking about earlier, as opposed to other types of facilities. The state is kind of pulling facts out of the air in a lot of this case, such as the women's mental health issue, where I see pretty much nothing in the record that was about that. But maybe that's so far afield from the licensing debate we've had that we don't need to worry about it. I think it is, in a sense, Your Honor, just because those are other substantive restrictions that the licensing scheme is in place to help enforce. And the validity of those is, I think, in play in the rest of the lawsuit, but has not surfaced yet. Okay. All right, thanks. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.